W. D. GRANT AND A. W. SMITH, TRADING AS GRANT AND SMITH, v.
J. L. BORDEN.

(Filed 22 March, 1933.)

**1. Landlord and Tenant D g—**

Where the terms of a lease fully provide for the rights of the parties upon destruction of the property by fire such rights will be determined in accordance with the written agreement, without reference to C. S., 2352 or the common law.

**2. Evidence A c—Courts will take judicial notice of tobacco-selling season.**

The courts will take judicial notice of the fact that the season for producer's sales of tobacco in North Carolina begins about 1 September and closes about 1 February, and that the crop is chiefly sold during September, October and November, and that only a small portion is sold during December and January.

3. **Landlord and Tenant D g—Under terms of lease and facts lessee held not entitled to recover rent paid upon destruction of property by fire.**

Where the lease of a tobacco warehouse for a term of years is executed in May and provides for the payment of the yearly rental in four equal installments on 15 September, 1 October, 15 October, and 1 November, and provides that if the premises are destroyed by fire a just proportion of the rent should be paid and the lease terminated, provided that if the fire occurs after the close of the season then the lessor shall not be called upon to refund any part of the rents paid, in an action between the parties to determine their rights upon destruction of the premises by fire on 30 December: *Held*, the contract did not contemplate a rental by the month, and the lessee is not entitled to recover any part of the rent paid, since the provision for the adjustment of the rent upon destruction of the property by fire did not require the lessor to refund any part of the rent paid during the tobacco season.

APPEAL by defendant from *Grady, J.*, at October Term, 1932, of WAYNE. Reversed.

On or about 1 May, 1929, the plaintiffs and the defendant entered into an agreement which is in writing, and which is as follows:

"North Carolina—Wayne County. ·

This agreement, made and entered into this 1 May, 1929, by and between ·J. L. Borden, of the county of Wayne and State of North Carolina, party of the first part, and W. D. Grant and A. W. Smith, of the county of Wayne, and State of North Carolina, trading as Grant and Smith, hereinafter designated as party of the second part:

Witnesseth: That the said party of the first part has agreed to lease and does hereby let and the said party of the second part has agreed to take and does hereby take, those certain premises known as the Tobacco Growers Warehouse situate at 512 to 520 on the east side of North John Street, Block No. 72, Goldsboro, N. C., together with all appurtenances thereto belonging, and the sole and uninterrupted use and occupation thereof, for the period of five years to commence on 1 May, 1929, and end on 30 April, 1933, upon the following terms and conditions, to wit:

1st: The party of the second part agrees to pay as rent the sum of $5,000 per year for the said period, which amount shall be payable as follows:

$1,250 on 15 September, 1929, 1930, 1931, 1932, 1933.

$1,250 on 1 October, 1929, 1930, 1931, 1932, 1933.

$1,250 on 15 October, 1929, 1930, 1931, 1932, 1933.

$1,250 on 1 November, 1929, 1930, 1931, 1932, 1933.

Said amount shall be evidenced by notes in the sum of one thousand two hundred and fifty dollars ($1,250) each, which shall be signed by Grant and Smith and delivered to the party of the first part upon the execution of this agreement, said notes not to bear interest until maturity. In addition to this amount of rent, it is understood and agreed that the party of the second part shall pay the sum of one dollar ($1.00) per thousand pounds for all over four million (4,000,000) pounds of tobacco, farmers first sale, that is on sales made for customers at the first offerings not including rehandling or resales, during each tobacco season, and in order to determine the exact amount of said additional rent, it is agreed that an accurate record of all purchases and sales shall be kept and that the books of the party of the second part shall be open to examination by the party of the first part at the close of the season, to be audited by him, or such other person as he may designate to look over said books for the purpose of ascertaining the amount of tobacco sold. This additional rent, if any, shall be payable at the close of the tobacco season or as soon thereafter as it can be determined how much tobacco has been handled during the season, but in this connection it is understood and agreed that resales of tobacco bought by the warehouse, shall not be counted.

2nd: It is mutually agreed that the party of the second part shall not sublet these premises or any portion thereof, nor assign this lease, without the written consent of the party of the first part, and upon the expiration of the period over which said lease extends, the party of the second part agrees to surrender possession without notice on the part of the party of the first part.

3rd: It is further mutually agreed that in case the party of the second part shall not pay the rents as herein stipulated, then upon failure to pay any one or more installments of the same, such failure shall, at the option of the lessor, work, as a forfeiture of this lease and it shall be lawful for him, without prejudice to other rights or remedies, or without any further notice or demand to enter into and take possession and peaceably hold and enjoy the same henceforth.

4th: It is further agreed that in the event the building hereinbefore referred to shall be substantially or totally destroyed by fire, then a just portion of the rent shall be paid and this lease then terminate, provided, however, that if a fire occurs after the close of the tobacco season, then the party of the first part herein shall not be called upon to refund any of the rents paid.

5th: The party of the first part agrees to maintain said warehouse in good usable condition and at his own expense to repair said warehouse as and when required to keep it in such condition. Said party of the first part further agrees to pay all *ad valorem* taxes assessed against said

property and to pay insurance premiums on the buildings on said premises.

6th: The party of the second part agrees, at the expiration of this lease, to return the premises to the party of the first part in as good condition as at present, reasonable wear and tear excepted, and excepting any damage to said buildings caused by a failure of party of the first part to make reasonable and necessary repairs.

In witness whereof the parties have hereunto set their hands and seals, causing this instrument to be executed in duplicate, this the day and year first above written.

J. L. BORDEN.    (Seal.)
A. W. SMITH.     (Seal.)
W. D. GRANT.     (Seal.)"

It is alleged in the complaint and admitted in the answer in this action:

1. That the plaintiffs entered into possession of the premises described in the foregoing agreement on or about 1 May, 1929, and paid the rent for said premises as stipulated in said agreement for the years 1929, and 1930, respectively, to wit: the sum of $5,000, for each year, in accordance with the provisions of paragraph 1 of said agreement.

2. That from the opening of the tobacco selling season of 1930 to 30 December, 1930, the plaintiffs sold in the warehouse located on said premises, at farmers' first sale, 4,287,000 pounds of tobacco; and that plaintiffs have not paid to defendant the sum of $287.00, due as additional rent under the provisions of paragraph 1 of said agreement.

3. That the warehouse located on the premises described in said agreement was totally destroyed by fire on 30 December, 1930; that under the provisions of paragraph 4 of said agreement, the lease for said premises contained therein, terminated at said date; and that the tobacco selling season for the year 1930, had not closed at the date of said fire.

This action arises out of a controversy between the plaintiffs and the defendant as to what amount if any should be paid to the plaintiffs by the defendant under the provisions of paragraph 4 of the agreement.

The court was of opinion that said agreement contemplated that the rental contract contained therein should be construed as a rental by the month and that on the facts admitted in the pleadings the plaintiffs are entitled to recover of the defendant the sum of $1,680.55, less the sum of $287.00.

From judgment that plaintiffs recover of the defendant the sum of $1,393.55, with interest from 30 December, 1930, and the costs of the action, the defendant appealed to the Supreme Court.

*Kenneth C. Royall, Carlisle Smith and Allen Langston for plaintiffs.*
*Langston, Allen & Taylor for defendant.*

CONNOR, J.  The rights and liabilities of the parties to this action must be determined in accordance with their agreement, which is in writing, and not in accordance with the statute, C. S., 2352, or with the common law.  The validity of the judgment in the action involves the construction of paragraph 4 of the agreement entered into by and between the parties on or about 1 May, 1929.  This paragraph is as follows:

"4. It is further agreed that in the event the building hereinbefore referred to shall be substantially or totally destroyed by fire, then a just portion of the rent shall be paid, and this lease then terminate, provided, however, that if a fire occurs after the close of the tobacco season, then the party of the first part herein shall not be called upon to refund any part of the rents paid."

The building referred to in this paragraph was a tobacco warehouse designed and used for the sale of tobacco during the tobacco selling season.  The rent for the premises for each year of the term of the lease was due and payable on 15 September, 1 October, 15 October and 1 November of said year.  The courts will take judicial notice of the well known fact that the tobacco selling season of each year in Eastern North Carolina begins about 1 September and closes about 1 February of the following year, that the annual crop of tobacco is sold chiefly during the months of September, October and November, and that only a small portion of the crop is sold during the months of December and January.  The notes executed by the plaintiffs and payable to the defendant matured during the season, the last note falling due on 1 November.

It was manifestly the intention of the parties to this agreement, as shown by the provisions of paragraph 4, construed in the light of all the provisions of said agreement, that if the warehouse located on the premises described in the agreement should be destroyed by fire before the notes executed by the parties of the second part in payment of the rent for the year in which the fire occurred, were due and paid, and before the close of the tobacco selling season for that year, then and in that event the parties of the second part should pay to the party of the first part only a just portion of the rent for which the notes were executed.  There is no provision in the agreement for a refund by the party of the first part to the party of the second part of any sum in the event the warehouse was destroyed by fire, during the tobacco selling season of any year included in the term of the lease, and after the notes were due and paid.  It is expressly provided that if a fire occurs after the close of the tobacco selling season of any year included in the terms of the lease, the party of the first part shall not be called upon to refund

any part of the rent paid for the preceding year. This proviso does not enlarge the liability of the party of the first part, or confer upon the party of the second part a right to recover any part of the rent paid during the preceding tobacco selling season.

There is error in the judgment which is founded upon the court's opinion that the agreement contemplated a rental by the month.

On the facts admitted in the pleadings, the plaintiffs are not entitled to recover of the defendant any sum as a refund for the rent paid for the year 1930. The defendant is entitled to recover of the plaintiffs the sum of $287.00, with interest from 30 December, 1930, and the costs of the action. The action is remanded to the Superior Court of Wayne County that judgment may be entered in accordance with this opinion. The judgment is

Reversed.